Scott, J. The last order, which appears by the transcript to have been made in this case, by the court below, directing it to be re-instated on the docket, was clearly coram non judia, inasmuch as, at the term, next preceding, the cause had been dismissed for alleged want of prosecution. And this decree dismissing the cause on that alleged ground was manifestly erroneous. It is difficult to conceive in what the complainant had failed. Three years before this decree of dismissal, the cause had been regularly heard on the bill, answer, depositions, and exhibits, and submitted to the court and taken under advisement- One year after that, the cause still remaining under advisement, the record shows that, by consent, it was again submitted to the court, which was but a work of supererogation. At the next succeeding term it was a third time submitted to the court. One year after this, the cause remaining under advisement, the presiding judge certified to the governor that he was disqualified to decide it; and, twelve months after that, a special judge, commissioned to decide this cause, without having even made a previous order for its re-argument, dismissed it for an alleged want of prosecution. This being the gtate of the case at that time the complainant was certainly in no default. His case was not in his own, but the hands of the court, and had been prosecuted as far as was in his power; and no further duty was incumbent on him except to hear and perform such decree as the court might pronounce. His case had been already called for hearing, and to that call he had responded; the next duty was to be performed by the court, and until that duty was performed nothing was incumbent upon the complainant. Nor was this the only error in this final decree. The amount of damages assessed was clearly unauthorized by law. The injunction had been sued out under the territorial laws, and, as a pre-requisite, the territorial judge had required bond and security, conditioned that the complainant should pay all such costs and damages as should be awarded against him in case the injunction should be dissolved. Had the injunction been dissolved during the existence of the territorial laws, the defendant could have claimed, at the hands of the territorial court, such remedy in that case as those courts could have afforded him. But since the erection of our State government, and especially since the 20th of March, 1839, when the Revised Statutes took effect, although none of the rights of the parties were affected by these changes, the defendant could not claim any remedy at the hands of the court below that these laws did not enable the court to afford. When, therefore, in 1845, the defendant elected, as a means of making this injunction bond available to him, to move the court below for an assessment of damages based upon the dissolution of the injunction that had been ordered by that court the 28th of March, 1839, that court had no power to make this assessment at more than ten per cent, on the amount of money, the collection of which had been enjoined. Digest, p. 594, sec. 21. But there was no error in the order of the court, made at the March term, 1838, setting aside the interlocutory decree upon the merits on the default of the defendant at the April term, 1837, when the bill was taken for confessed. That decree had never been made iinal. An interlocutory decree upon the merits did not become final, under the territorial law, until “made absolute” (Steele & McCampbell's Digest, p. 115, sec. 17) by subsequent action of the court. No such action had been taken, and it was competent for the court to set it aside, and permit the defendant to answer — the showing having been amply sufficient. The remaining- question before us relates to the complainant’s exceptions to the defendant’s answer, which the court overruled. It is admitted, by the answer, that, on the 6th December, 1833, the complainant purchased from the defendant, Hemphill, an improvement and claim on the public lands, and for the purchase money executed his note payable the 1st of January, 1835, and that at that time the defendant sealed and delivered to the complainant a deed for the improvement and claim. But it is not pretended that at that time there was any parol agreement between the parties other than that the defendant might remain on the improvement and claim, and use and cultivate the same until the 1st November, 1834, and that the defendant should crib for the complainant, 'that year, 1000 bushels of corn, and that, on the 1st of November, 1834, the complainant should receive this corn, and pay for it at the rate of fifty cents per bushel. No parol agreement was made at that time for any future rescisión of the sale and conveyance, nor any agreement that the deed should not instantly operate as a deed, but be merely an escrow. But the defendant alleges that afterwards, to wit: on or about the 7th of December, a verbal agreement was made between him and the complainant which provided for additional improvements on the claim sold and conveyed, to be paid for by the delivery of a slave (in time to make a crop in the year 1834) of the value of six hundred dollars, five hundred of which value to pay for the thousand bushels of corn; and that at that time it was further stipulated, verbally, that the deed, that had been before executed under the circumstances mentioned, should be left with Maj. Pryor, and, in case the defendant failed to come into the county on or before the 1st November, 1834, and receive possession of the improvement, and receive and pay for the corn, and for the additional improvements in the meantime made, that, in such case, the deed was to be delivered up to the defendant, and the defendant was to deliver up the complainant’s note, and that all contracts between the parties, either verbal or written, were then to be considered dissolved and discharged. The complainant excepts to so much of the answer as sets up this second verbal agreement, and insists that it cannot have any legal effect to defeat the original contract executed by the deed of conveyance by the one party, and the execution of the promissory note for five hundred dollars, payable the 1st January, 1835, by the other party. It is true that a verbal agreement, to that purport, made contemporaneously with the execution of the deed, might control or defeat it by showing it to have been in truth only a mortgage, although on its face absolute, or by showing that it was agreed, or declared, or delivered, as an escrow merely, to become a deed on the happening of a future contingency. But although the law allows evidence of this sort to be introduced, yet all the authorities agree that any declaration of the grantor, or agreement, of understanding, different from the face of the deed, to control, alter, or defeat it, on either of these grounds, must be made at the time of executing it, and not afterwards : and therefore, any verbal agreement made on the 7th December, cannot, in this case, show that the alleged deed was a mere escrow, or that it is to be taken as having only this effect. If this subsequent parol agreement can, in any way, affect this supposed deed, then it must be done by some other operation. Can it have this effect by way of condition ? Unquestionably not; for, to have that legal effect, it must have been part and parcel of the deed itself which is to be defeated, which is not pretended. Nor can it defeat it by way of defeasance, for every defeasance must not only contain proper words, as that the thing shall be void, as this parol agreement does, (2 Salk. 575. Willes, 108,) but it “ must be made in eodem modo, and by matter as high as the thing to be defeated;” {Touch. 397,) and as the thing here to be defeated is an absolute deed, nothing short of a defeasance sealed and delivered can defeat it. But, even if this were not the true ground upon which to place this case, and it were to be placed on the ground of a sealed executory contract, which is the most favorable position that any plausible construction can place it in to be most for the advantage of the defendant, Hemphill, it could not avail as a defence to the complainant’s case. For “ the law is understood to be well settled that a covenant under seal not broken, cannot be discharged by a parol agreement.” (1 Taunton, 430. 10 Wend. 1848. 11 ib. 30. Delacroi vs. Bulky, 13 Wend. 73.) The extent that the authorities seem to go, when clearly examined, is, that after breach of a sealed contract, the parties to it may discharge any liability upon it by entering into a new agreement in relation to the same subject matter, which new agreement is a valid contract founded upon sufficient consideration, and “ that the law remains as it" always existed, that a sealed executory contract cannot be released or rescinded by a parol executory contract. But after breach of a sealed contract a right of action may be waived or released by anew parol contract in relation to the same subject matter, or by any valid parol executed contract.” Now it cannot, in any sense, be pretended, that, on the 7th of December, when the parol contract sought to be set up by the answer was made, that there was then any breach of the contract of sale and purchase of the improvement and land claim. Nor could it be possible that any proper breach could accrue until long afterwards, the note for the pur-shase money falling due not until 1st January, 1835. If, on the 1st of November, 1834, the complainant should have failed to take possession of the improvement sold, as the answer alleged he verbally stipulated to do, this failure would be to the advantage and not the prejudice of the defendant. And if, for the purpose of the question we are considering, that part of the first verbal agreement, as alleged in the answer, which relates to the thousand bushels of corn, is considered a part of the contract of sale and purchase of the land and improvement, which is all that the defendant can possibly claim, even this could not be broken until November, 1834, long after the date of the second parol agreement, which the answer attempts to set up as working a discharge of the sealed contract. Then, viewed in this, the most favorable attitude for the defendant, it could not have been sooner than November, 1834, that any parol contract could have had the effect to discharge the sealed contract, and even then it could have been discharged only by an executed and not by an executory parol contract, such as is by the answer sought to be set up. In any legal view, then, of the case, it is clear that the court below erred in overruling the complainant’s exception -to the defendant Hemphill’s answer. And for the various errors we have pointed out, the decree, and the several orders of the court below touching the various erroi’s, must be reversed, and the cause remanded to be proceeded in not inconsistently with this opinion.